IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v.       : | Case No: 21-MJ-296 (GMH) |
| : | |
| **CHRISTOPHER WORRELL,** : | |
| : | |
| **Defendant.** : | |

**MOTION FOR EMERGENCY STAY AND
FOR REVIEW OF RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to, first, stay defendant Christopher Worrell's release pending trial, and second, review the decision by the Magistrate Judge from the Middle District of Florida to deny the government's motion for pre-trial detention. In support thereof, the government states the following:

**I.    BACKGROUND**

A.    Procedural Posture

On March 12, 2021, defendant Christopher Worrell was arrested in his home state of Florida on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey in connection with a Criminal Complaint charging the defendant with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority While Carrying a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A), Knowingly Engaging in Disorderly or Disruptive Conduct in any Restricted Building or Grounds While Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A), Knowingly Engaging in Act of Physical Violence in any

1

Restricted Building or Grounds While Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A), Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 18 U.S.C. § 5104(e)(2), and Obstruction of Justice/Congress in violation of 18 U.S.C. § 1512(c)(2).

At his initial appearance in the Middle District of Florida, the government made a motion to detain the defendant without bond pending trial. The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E), which provides for detention in felony cases involving a dangerous weapon. The presiding magistrate judge denied the government's detention motion and issued an order releasing the defendant with certain conditions. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge denied that request, and absent further action, the release will be effectuated at approximately 5:00 pm EST today, March 12, 2021.

B.     **Statement of Facts**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President

Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 13, 2021, the FBI was notified via a non-anonymous tip that Worrell had participated in the riots on January 6, 2021, and had uploaded video of himself on Facebook at the riots, issuing commands to other rioters.

On January 18, 2021, Worrell was interviewed by FBI agents who asked him whether he had participated in the U.S. Capitol riots on January 6, 2021.  Worrell was extremely agitated and upset that the FBI was at his house.  He eventually admitted that he was at the U.S. Capitol on January 6, 2021, but denied entering the U.S. Capitol building, and specifically denied any other wrongdoing or criminal conduct on his part.  He also became agitated when asked about the Proud Boys.

Law enforcement subsequently accessed the following two photographs on open-source Twitter accounts, and recognized this individual to be Worrell.



In these photographs, Worrell can be seen with other individuals.  Those individuals are wearing clothing that appears to be affiliated with the Proud Boys (including, for example, a helmet and hat with "PB" emblazoned on them; and the Fred Perry yellow and black laurel wreath insignia that is now commonly worn by members of the Proud Boys).  Worrell appears to be

4

wearing a Proud Boy patch on his tactical vest. As shown in the next two photographs, Worrell appears to have worn this same or a nearly identical tactical vest at the U.S. Capitol on January 6, 2021.

A YouTube video that appears to have been made by a Turkish public broadcasting company, TRT World, was posted on January 7, 2021. At the 9:13-minute mark of the video, Worrell and two other unknown males are interviewed and identified as Proud Boys members. All three individuals are wearing shirts with the Fred Perry yellow and black laurel wreath insignia that is now commonly worn by members of the Proud Boys. Worrell's black t-shirt has "Proud Boys" written on it in yellow letters. The two screenshots below show Worrell's face and, in the second screenshot, Worrell talking with Enrique Tarrio, the leader of the Proud Boys.



The FBI subsequently identified Worrell in other photographs taken on January 6, 2021:



A zoomed-in version of this photograph shows a canister clipped to the front right side of Worrell's tactical vest.  Based on its features, law enforcement believes the canister clipped to Worrell's vest is a canister of a common brand of pepper spray gel, depicted in the photograph on the right below:



The FBI also found the following open-source photographs. The first depicts Worrell with other individuals, several of which law enforcement believe to be Proud Boy members, in front of the U.S. Capitol. The second depicts Worrell near the U.S. Capitol. Worrell is circled in red in both photographs.





The FBI subsequently located open-source video from YouTube that shows Worrell

wearing the same clothing, tactical vest, and hydration pack as in the above photographs. In the screenshot from this video below, Worrell is wearing what appear to be a push-to-talk radio ear piece in his left ear.



The following two photographs were obtained from a photographer. They depict Worrell among a crowd of individuals on the west side of the U.S. Capitol Building. The first photograph is a zoomed-in version of the second photograph. In the second photograph, he is off to the left, and is circled in red.





Worrell is approximately ten yards to the left of the black statue on a white granite

10

pedestal that is wrapped in plastic on the right side of the preceding photograph (this statue is circled in green above). To the right and in front of that statute is a line of U.S. Capitol Police and Metropolitan Police Department officers attempting to control the crowd.

The photographer also provided the following photograph of Worrell standing in front of the same statue. In this photograph, Worrell appears to be spraying pepper spray gel in the direction off-camera near the steps leading into the U.S. Capitol Building. The metadata accompanying this image indicates that this photograph was taken at 2:31 PM on January 6, 2021.



Although this photograph does not itself show who Worrell was spraying, the caption of the photograph submitted with the photograph by the photographer to certain stock-photograph websites was: "Pro-Trump protesters uses papper spray against police during Capitol building riot." In addition, in other photographs and videos from that time of day, law enforcement officers

11

are positioned approximately where Worrell appears to be spraying pepper spray. For example, the metadata for the following image, from the same photographer, indicates that it was taken at 2:27 PM, four minutes *before* the photograph of Worrell pepper spraying. This photograph was taken from a location within a few feet or yards of where Worrell was photographed spraying pepper spray gel. A line of law enforcement officers is visible on the left of the photograph.



The metadata for the following image, also from the same photographer, indicates that it was taken at 2:32 PM, just one minute *after* the photograph of Worrell pepper spraying. Again, this photograph is taken from the same perspective as the photograph above, facing south. The white platform that forms the backdrop of the photograph above of Worrell pepper spraying is visible on the lower left portion of the photograph. Right next to that platform is, again, a line of law enforcement officers.



A photograph taken by a member of law enforcement shows a similar scene from a different vantage point with a timestamp of 2:33 PM. The apparent location of Worrell's pepper spraying would be in the lower right corner of this photograph, shielded from view by the scaffolding in the foreground and the white wooden platform to the right of the line of law enforcement officers. This shows the proximity of Worrell's act to the line of law enforcement officers guarding the U.S. Capitol Building on that day.



Finally, open-source video captured on that day appears to capture Worrell at or near the time of the pepper-spray assault. In this video, a man and woman are visible who appear to match the man and woman standing on the white wooden platform in the background of the photograph of Worrell pepper spraying. These two individuals are circled in red below. The woman has a tan jacket and red gloves, which she is holding over her face in the high-resolution photograph of Worrell pepper spraying; the same woman appears to be holding her gloves in the same or a similar position in the still from the video.



Roughly twenty seconds later in that video, a person law enforcement believes to be Worrell appears in the frame, for only a few seconds. The following two cropped stills from that video capture that moment. The black statute wrapped in plastic, under which Worrell was standing when spraying pepper spray gel, is visible on the right side of the photograph, as are two members of law enforcement. In other portions, the video depicts a line of law enforcement officers extending off to the right of this still shot, consistent with the photographs above:





The first of those two photographs depicts certain things that also appear in the photograph of Worrell pepper-spraying: an American flag waving in the background; someone's hand holding up what appears to be a black cellphone over Worrell's right shoulder; and a tall individual with a black helmet, reflective sunglasses, and a black and gray neck gaiter next to or behind Worrell. The identifying features just noted are circled in green below.





Based on the above photographic and video evidence, the government believes it is virtually certain that Worrell was aiming his pepper-spray gel at law enforcement officers on January 6, 2021.

C.     **Order for Release**

After an initial appearance and hearing in the Middle District of Florida on March 12, 2021, the presiding magistrate judge issued an Order of Release for the defendant with certain conditions. On that same day, the United States orally sought a stay of the Order pending this Motion for Review. The magistrate judge denied that request, and absent further action, the release will be effectuated at the release will be effectuated at approximately 5:00 pm EST on March 12, 2021.

### III.  ARGUMENT

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader

construction than merely danger of harm involving violence. . . .

See S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E) because he is charged with felonies involving a dangerous weapon. In this case, those offenses are: Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority While Carrying a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A), Knowingly Engaging in Disorderly or Disruptive Conduct in any Restricted Building or Grounds While Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A), Knowingly Engaging in Act of Physical Violence in any Restricted Building or Grounds While Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A).

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

19

The government requests review of the magistrate judge's decision to release the defendant and seeks a further stay of the order from this Court.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY

        */s/ William Dreher*
        WILLIAM DREHER
        D.C. Bar No. 1033828
        Assistant United States Attorney (Detailee)
        700 Stewart Street, Suite 5220
        Seattle, WA 98101
        (202) 553-4579
        william.dreher@usdoj.gov