UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Case No. 21-MJ-296 (GMH) |
| | ) |
| CHRISTOPHER WORRELL, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT TO DEFEDANT'S
EMERGENCY MOTION FOR RECONSIDERATION**

Date: March 26, 2021

Respectfully Submitted,

*[signature: John M. Pierce]*

John M. Pierce (*PHV Admitted*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorney for Defendant Christopher Worrell*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................................1

II. PROCEDURAL HISTORY ......................................................................................................2

III. ARGUMENT............................................................................................................................2

    A. Reconsideration is Warranted. ................................................................................2

    B. Standard of Review..................................................................................................6

        1. Nature and Circumstances of the Offense .................................................8

            a. Considerations Relevant to the Nature and Circumstances of Offenses Committed at the U.S. Capitol on January 6, 2021 ................................................8

            b. The Nature and Circumstances of Defendant's Offenses ....................................................................................9

            c. The Weight of the Evidence Against the Defendant .......10

            d. The History and Characteristics of the Defendant...........11

            e. The Nature and Seriousness of the Danger Posed by the Defendant's Release...................................................12

IV. CONCLUSION .....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ali v. Carnegie Inst. of Washington*,
   309 F.R.D. 77 (D.D.C. 2015)......................................................................................................3

*Ciralsky v. CIA*,
   355 F.3d 661 (D.C. Cir. 2004)....................................................................................................3

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996)....................................................................................................3

*Hammon v. Kempthorne*,
   448 F. Supp. 2d 114 (D.D.C. 2006)............................................................................................3

*In re Liuksila*,
   133 F. Supp. 3d 249 (D.D.C. 2016)............................................................................................1

*United States v. Bloch*,
   794 F. Supp. 2d 15 (D.D.C. 2011)..............................................................................................1

*United States v. Booker*,
   613 F. Supp. 2d 32 (D.D.C. 2009)..............................................................................................1

*United States Chrestman*,
   No. 21-mj-218, 2021 WL 765662 (D.D.C. Feb. 26, 2021) ...........................................8, 11, 12

*United States v. Clark*,
   No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020).....................................13

*United States v. Coughlin*,
   821 F. Supp. 2d 8 (D.D.C. 2011)................................................................................................1

*United States v. Ferguson*,
   574 F. Supp. 2d 111 (D.D.C. 2008)............................................................................................1

*United States v. Gilbert*,
   CRIMINAL ACTION NO. 20-404 (E.D. Pa. Jan. 7, 2021) .......................................................6

*United States v. Hernandez*,
   No. PX-19-158-9 (D. Md. Apr. 29, 2020) ................................................................................13

*United States v. Hong Vo*,
   978 F. Supp. 2d 41 (D.D.C. 2013)..............................................................................................1

*United States v. Jones*,
    916 F. Supp. 2d 83 (D.D.C. 2013) ................................................................................ 2

*United States v. McCall*,
    465 F. Supp. 3d 1201 (M.D. Ala. 2020) ....................................................................... 5

*United States v. Munchel*,
    No. 21-3010, --- F.3d ---, 2021 WL 1149196 (D.C. Cir. Mar. 26, 2021) ..................... 12

*United States v. Slough*,
    61 F. Supp. 3d 103, 2014 WL 3734139 (D.D.C. 2014) ................................................ 1

*United States v. Stewart*,
    19 F. App'x 46 (4th Cir. 2001) (*per curiam*) ............................................................... 7

*United States v. Sunia*,
    643 F. Supp. 2d 51 (D.D.C. 2009) ................................................................................ 1

*Zyko v. Dep't of Defense*,
    180 F. Supp. 2d 89 (D.D.C. 2001) ................................................................................ 3

**Statutes**

18 U.S.C. § 3142 ................................................................................................... *passim*

28 U.S.C. § 2255 ............................................................................................................ 1

29 U.S.C. § 794 ............................................................................................................. 4

42 U.S.C. § 12131 ......................................................................................................... 4

**Federal Rules**

D.D.C. L.R. 14(F) ......................................................................................................... 1

Fed. R. Civ. P. 54 .......................................................................................................... 1

Fed. R. Civ. P. 59 ...................................................................................................... 1, 3

**Other Authorities**

Tenforde MWet al., *Symptom Duration and Risk Factors for Delayed Return to Usual Health Among Outpatients with COVID-19 in a Multistate Health Care Systems Network — United States, March–June 2020*, Morbidity & Mortality Wkly. Rep. (July 31, 2020), http://dx.doi.org/10.15585/mmwr.mm6930e1; ........................... 5

Defendant Christopher Worrell ("Defendant" or "Mr. Worrell"), by and through counsel, pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f)(2) and Fed. R. Civ. P. 59(e),[1] respectfully seeks emergency reconsideration of Chief Judge Beryl A. Howell's March 19, 2021 Order of Detention Pending Trial (ECF No. 13) and that the court reopen his detention hearing due to changed circumstances.[2] Mr. Worrell's motion should be assessed under the "as justice requires" standard.[3] In accordance with Local Rule 14(F), a brief in support seeking release from custody pending trial due to the COVID-19 pandemic and the concomitant risk it poses to him given his serious medical history is being submitted simultaneously with this motion and a proposed order granting the relief requested.

**I.     PRELIMINARY STATEMENT**

Mr. Worrell is currently held in pretrial detainment without access to his prescribed cancer medication. He is experiencing a rapidly deteriorating condition as he develops lymphomas on the skin of his face putting him at great risk for further complications and COVID-19 exposure. Mr.

---

[1] While no Federal Rule of Criminal Procedure specifically provides for motions for reconsideration in criminal cases, the Supreme Court has recognized, in dicta, the utility of such motions. *In re Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016) (citing *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)). D.C courts have adopted such a philosophy by regularly entertaining motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure. *See United States v. Sunia*, 643 F. Supp. 2d 51, 60-61 (D.D.C. 2009) (applying analysis presented by Fed. R. Civ. P. 54(b) to criminal defendants' motion to reconsider partial denial of motion to dismiss); *see also United States v. Booker*, 613 F. Supp. 2d 32, 34 (D.D.C. 2009) (applying analysis presented by Fed. R. Civ. P. 59(e) to criminal defendant's motion for reconsideration of decision denying a motion to vacate the conviction under 28 U.S.C. § 2255); *United States v. Slough*, 61 F. Supp. 3d 103, 2014 WL 3734139, at 2 (D.D.C. 2014) (applying Fed. R. Civ. P. 54(b) to criminal defendants' motion for reconsideration of decision excluding testimony).

[2] For motions for reconsideration of interlocutory orders, the Courts have applied the "as justice requires" standard normally applied to motions under Rule 54(b) of the Federal Rules of Civil Procedure. *United States v. Coughlin*, 821 F. Supp. 2d 8, 18 (D.D.C. 2011) (quoting *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)). *See also United States v. Bloch*, 794 F. Supp. 2d 15, 19 (D.D.C. 2011); *United States v. Sunia*, 643 F. Supp. 2d 51, 61 (D.D.C. 2009).

[3] Judges considering rehearing motions in criminal cases in this district have applied the "as justice requires" standard normally applied to motions under Rule 54(b) of the Federal Rules of Civil Procedure. *United States v. Hong Vo*, 978 F. Supp. 2d 41, 47-48 (D.D.C. 2013) citing *United States v. Bloch*, 794 F. Supp. 2d 15, 19 (D.D.C. 2011); *United States v. Sunia*, 643 F. Supp. 2d 51, 61 (D.D.C. 2009).

Worrell is allegedly one of the thousands of individuals who went to the grounds of the U.S. Capitol Complex on January 6, 2021 to exercise his First Amendment rights. He was arrested in the Middle District of Florida pursuant to a warrant issued in Washington, D.C. On March 19, 2021, Mr. Worrell appeared remotely before Chief Judge Beryl A. Howell, in the District of Columbia for purposes of an initial appearance and detention hearing on several federal charges. Defendant appeared with his counsel, John Pierce.

## II.     PROCEDURAL HISTORY

At the conclusion of the March 19 detention hearing, this Court denied bail and conditional release. (*See* Exhibit A, Order of Detention Pending Trial Bail, dated March 19, 2021, (Dkt. No. 13)). Since that time, Mr. Worrell has been held at the Charlotte County Jail in Punta Gorda, Florida.

Mr. Worrell files this Emergency Motion for Review of his detention order. Specifically, Mr. Worrell seeks conditional release pending electronic ankle monitoring and home detention, the same conditions imposed by the Florida Magistrate Judge. The relief requested is justified on two grounds: *first*, Mr. Worrell suffers from—and is currently undergoing treatment for—non-Hodgkin's lymphoma and must be released so that he can continue receiving treatment; *second*, Mr. Worrell's immune system has been compromised by the cancer, making him highly susceptible to COVID-19.

## III.    ARGUMENT
### A.     Reconsideration is Warranted.

"Although not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are allowed in criminal cases." *United States v. Jones*, 916 F. Supp. 2d 83, 86 (D.D.C. 2013). Reconsideration is appropriate when there exists "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

2

manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations and citation omitted). Manifest injustice or clear error can include "legal errors the court made," *Zyko v. Dep't of Defense*, 180 F. Supp. 2d 89, 91 (D.D.C. 2001), or conclusions "premised on factual error," *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 83 (D.D.C. 2015) (citing *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)). *See also Hammon v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006) (observing that Rule 59(e) motions "are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law") (internal quotations and citation omitted). For each of the following reasons, reconsideration is warranted here.

In the Government's bail report, Mr. Worrell reported that he is in poor physical health and suffers from non-Hodgkin's lymphoma. He was diagnosed with this cancer in 2007 and has been receiving treatment, to include chemotherapy as well as radiation. *See* Ex. B, Affidavit of Dr. Bino Rucker, M.D. Mr. Worrell is currently under the care of his primary care physician and he has never been diagnosed with a mental health condition. *See* Ex. C, Government Bail Report. In Dr. Rucker's affidavit, he states that "[c]ontinuing confinement at the federal detention center presents substantial risk of serious infection to Mr. Worrell and his transfer to home confinement would significantly decrease the risk to his health in connection with the ongoing COVID-19 pandemic." *See* Ex. A. Dr. Rucker will also have Mr. Worrell for an examination immediately following his release, should this Court grant his request for conditional release as justice requires, because Mr. Worrell's requests for the necessary cancer medication have been denied by jail staff. Since Mr. Worrell will be moved from COVID-19 quarantine to the general population on Friday, March 26, 2021, time is of the essence for a favorable ruling in this urgent matter to obtain emergency medical care and medications for Mr. Worrell.

Inadequate medical care of those in confinement presents a widespread hazard. More specifically, since his detention, Mr. Worrell has suffered aggravating symptoms of his cancer, including lymphomas of the skin on his face. The lesions are often itchy, scaly, and red to purple – appearing in different parts of the skin and increase Mr. Worrell's COVID infection risk. Despite the Government's algorithm to determine Mr. Worrell's flight risk, the Court did not consider this serious progressive disease which jeopardizes Mr. Worrell's life without adequate medical supervision and treatment.

Mr. Worrell has not received adequate medical care while housed in detention due to the failure to furnish him proper medications which has resulted in him developing serious lymphoma symptoms, including developing painful lesions on his face, and causing him reasonable fear of the cancer metastasizing to other parts of his body. Failure to provide accommodations to individuals undergoing chemotherapy and radiation violates federal regulations that protect people with disabilities, including those with life-threatening cancer, pursuant to §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*. In order for Mr. Worrell to get the care that he needs, he must have his required medications, trained staff, qualified medical professionals, and properly equipped on-site medical facilities. Furthermore, there should be a limit on the length of detention for individuals with serious medical conditions and to accommodate access to proper medical care in the interim.

Furthermore, Mr. Worrell's non-Hodgkin's lymphoma diagnosis also makes him among those most at risk for contracting and suffering severe symptoms of COVID-19. Non-Hodgkin's lymphoma is cancer that originates in your lymphatic system, the disease-fighting network spread

throughout your body.[4] In non-Hodgkin's lymphoma, tumors develop from lymphocytes — a type of white blood cell. This cancer impacts Worrell's ability to fight off even routine infections, let alone the deadly virus which has spread across the world and is particularly rampant in prisons.[5] There are currently 349 federal inmates and 1,351 Federal Bureau of Prisons (BOP) staff who have confirmed positive test results for COVID-19 nationwide, and there have been 227 inmate deaths and 4 staff deaths as a result of COVID-19. The disease is ripping through carceral facilities, infecting incarcerated individuals at a rate four times the general population, and causing deaths at nearly twice the national rate. Detainees are held in very crowded conditions in a setting that is designed for control, but certainly not for hygiene or to prevent transmission of an infectious disease.

Courts across the country have recognized that BOP undertreats or ignores COVID-related symptoms, despite Center of Disease Control findings that COVID-19 can "result in prolonged illness even among persons with milder . . . illness." Media accounts confirm that many who test positive for COVID-19 in carceral facilities receive virtually no care, and that staff have "ignored or minimized . . . COVID-19 symptoms and mixed the sick and healthy together in haphazard quarantines." Tenforde MWet al., *Symptom Duration and Risk Factors for Delayed Return to Usual Health Among Outpatients with COVID-19 in a Multistate Health Care Systems Network — United States, March–June 2020*, Morbidity & Mortality Wkly. Rep. (July 31, 2020), http://dx.doi.org/10.15585/mmwr.mm6930e1; *see also United States v. McCall*, 465 F. Supp. 3d 1201, 1209 (M.D. Ala. 2020) (finding that "the overwhelming number of COVID-19 cases in

---

[4] https://www.mayoclinic.org/diseases-conditions/non-hodgkins-lymphoma/symptoms-causes/syc-20375680; https://www.cancer.org/latest-news/common-questions-about-the-new-coronavirus-outbreak.html (Last viewed on March 24, 2021).
[5] https://www.bop.gov/coronavirus/#:~:text=COVID%2D19%20Cases&text=There%20are%20395%20federal%20inmates,attributed%20to%20COVID%2D19%20disease. (Last viewed on March 24, 2021)

5

combination with other factors, constituted extraordinary and compelling reasons for release"). Those without COVID-19 also suffer; during the pandemic medical care for chronic conditions has been delayed and, in many cases, withheld entirely.

Reconsideration based on risk due to COVID-19 should be considered along with the other factors outlined in 18 U.S.C. § 3142. *See United States v. Gilbert*, CRIMINAL ACTION NO. 20-404 (E.D. Pa. Jan. 7, 2021). Where defendants have a "particular vulnerability to the disease", courts have found that this is a compelling reason for release under 3142(i). *Id.* Mr. Worrell, who is diagnosed with non-Hodgkin's lymphoma is at an increased risk of both contraction of COVID-19 and death from COVID-19 and thus has a particular vulnerability to the disease. Therefore, reconsideration is warranted. *See Id.* These compelling reasons are in line with common-sense recommendations for how to address the pandemic in carceral settings, including ensuring safe conditions for people who remain incarcerated, reducing incarceration levels to end facility overcrowding, limiting the spread of COVID-19; and supporting safe and effective re-entry to the community.

**B.      Standard of Review**

Pretrial detention and release are governed by the Bail Reform Act (BRA), 18 U.S.C. § 3142, *et seq*. The BRA instructs the Court to seek "the least restrictive further condition or conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*. § 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial." *Id.* § 3142(e)(1). Where, as here, a detention ruling is based on a defendant's danger to the community, the Court

must make the finding by clear and convincing evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (*per curiam*).

The Court's determination is governed by four factors:

1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

2) The weight of the evidence against the person;

3) The history and characteristics of the person, including -

    A. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    B. Whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Government contends that pretrial detention is warranted because Mr. Worrell is charged with felonies involving the use of an allegedly "dangerous weapon"—in this case, pepper spray. This contention along with the alleged offense conduct purports to make Mr. Worrell a danger to the community. *See* Gov't's Mem. Supp. Mot. Review Release Order ("Gov't's Memo.") at 8, ECF No. 9. At the outset, however, it is important to review the overall framework of the

detention issues presented to the Court, the impact of COVID-19, and the conditions within Charlotte County Jail. As described above, when considering whether there are any conditions of pretrial release "that will reasonably assure" a particular defendant's appearance in court, and the safety of the community, 18 U.S.C. § 3142(f), Congress carefully prescribed these four factors that a court must consider. *Id.* § 3142(g).

### 1. Nature and Circumstances of the Offense

The first statutory factor requires the Court to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). Mr. Worrell was in fact one of hundreds, if not thousands, of individuals who allegedly assaulted the Capitol on January 6, 2021. The BRA, of course, requires a reviewing court to "assess the specific conduct of each defendant." *United States Chrestman*, No. 21-mj-218 (ZMF), 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). The reviewing court should evaluate the nature and circumstances of Mr. Worrell's specific conduct, then consider the different factors that warrant potential pretrial detention for his participation. *Id.*

### a. Considerations Relevant to the Nature and Circumstances of Offenses Committed at the U.S. Capitol on January 6, 2021

In the course of this Court's consideration of motions for pretrial release or detention, the goal is to ensure that the pretrial release of a defendant will not imperil "the safety of any other person and the community." § 3142(g)(1). This Court should consider any particulars that would indicate whether Mr. Worrell continues to pose a threat to the community. The first two factors to consider examine Mr. Worrell's conduct before January 6, in furtherance of the offenses charged. First, if any indication exists that a defendant engaged in prior planning before arriving at the Capitol, and second, if Mr. Worrell's alleged carrying or use of a potentially dangerous weapon, indicates a degree of preparation for the attack. *See Chrestman*, 2021 WL 765662, at *8.

8

Allegedly Mr. Worrell was caught up in the frenzy of the crowd and allegedly was among a group of thousands outside the Capitol. However, there is no evidence that his intention was to cause mayhem, storm the Capital, or disrupt the operation of our democratic process. There is no evidence that he poses an ongoing danger to any person or to the community.

The next two factors scrutinize Mr. Worrell's role in relation to other participants. There is no evidence of coordination with other participants before, during, or after the event that indicates Mr. Worrell coordinated, amplified, or otherwise endeavored to ensure the success of the breach of the Capitol. Mr. Worrell was not a "de facto" leader in the Capital's incident and did not encourage participants' misconduct. In fact, the Government stated that they have no "evidence indicating that Mr. Worrell assumed a leadership role on January 6." *See* Gov't's Memo, at ¶¶ 5-6, ECF No. 9. In addition, Mr. Worrell is not even alleged to have breached the interior of the Capitol building: The Government itself concedes that it "does not currently have reason to believe that Mr. Worrell entered the U.S. Capitol building." *Id.* at ¶ 6.

b. **The Nature and Circumstances of Defendant's Offenses**

Consideration of every one of the factors outlined above demonstrates the potential gravity of defendant's offenses in the instant case. The factual proffer by the Government is that Mr. Worrell allegedly traveled from his home to the nation's capital, prepared with a pepper spray and tactical protective gear, to participate in a demonstration on January 6, 2021. On that day, he allegedly assembled with other members of the Proud Boys and marched with them on the Capitol grounds. Throughout these events, Mr. Worrell did not display any acts indicating that he was a leader of the group and did not encourage the "taking" of the Capitol or interference with Capitol Police as they attempted to control the crowd or arrest individual participants. He did not confront the Capitol Police, threaten them, or make any attempt to interfere with their carrying out their

duties (*See* Ex. D, Video Captured by Mr. Worrell on January 6, 2021). In fact, he told multiple officers that he was there "in peace". *See* Ex. D.

The Government would have this Court believe that Mr. Worrell intentionally sprayed pepper spray at a group of Capitol Police officers. Yet the Government concedes that it "do[es] not currently know with certainty the target at which Mr. Worrell was spraying" or that Mr. Worrell even sprayed a law enforcement officer. *See* Statement of Facts, ¶ 22, ECF No. 1-1. Further, the Government states that "law enforcement are positioned where WORRELL appears be spraying pepper spray" but no concrete proof that Mr. Worrell sprayed a Capital Police officer or that an officer was hit by pepper spray at all. *Id.* The nature and circumstances of Mr. Worrell's action during January 6 do not show that there was a clear disregard for the law enforcement, rather they show only that Mr. Worrell was engaging in First Amendment protected activity. Therefore, the Government has not shown that Mr. Worrell poses a danger to any person or to the community. Accordingly, this first factor weighs in favor for Mr. Worrell.

c. **The Weight of the Evidence Against the Defendant**

The weight of the evidence against Mr. Worrell is not overwhelming and does not favor detention. According to the Government, "[p]hotographic and video evidence establish his presence on U.S. Capitol grounds and in a restricted area." *See* Gov't's Memo, at pp. 20-21. Photographic evidence shows Mr. Worrell carrying and then use of pepper spray gel, which the Government claims is a dangerous weapon. Yet the Government "do[es] not currently know with certainty the target at which Mr. Worrell was spraying," nor even that any pepper spray actually contacted a law enforcement officer. *See* Statement of Facts, at ¶ 22, ECF No. 1-1.[6]

---

[6] The Government attempts to explain away this conspicuous omission by suggesting that it has not yet "sifted through the full mountain [of] . . . evidence that depicts the area and time of Mr. Worrell's assault." Statement of Facts, at ¶ 22, ECF No. 1-1.

10

This image of Mr. Worrell dispensing pepper spray alone with no indication of the intended target, nor even any indication of impact with anyone, and does not support the Government's unsubstantiated allegation that Mr. Worrell is guilty of obstruction under Section 1512 as charged. The second statutory factor thus favors Mr. Worrell.

   d. **The History and Characteristics of the Defendant**

The third factor requires examination of Mr. Worrell's history and characteristics. Mr. Worrell has a substantially limited and nonviolent criminal history. Gov't's Mot. at p. 21; *Chrestman*, 2021 WL 663189, at *7. Mr. Worrell's criminal history consists of five arrests and three prior convictions. The most recent arrest was in 2009—over a decade ago—when Mr. Worrell attempted to confront a woman who he believed had run a red light. *See* Ex. 1, at 3. Mr. Worrell pled no contest. Since that period Mr. Worrell has no criminal history.

Finally, the Government relies on *Chrestman* to support its claim that detention is necessary because Mr. Worrell "would obstruct justice." *See* Gov't's Memo, at 22–23. Yet the Government ignores much of the *Chrestman* court's reasoning. Specifically, in that case, the Government proved that Chrestman had hidden his cell phone "in a dresser drawer in the bedroom of his six-year-old child." *Chrestman*, 2021 WL 765662, at *14. Further, the Government proved that Chrestman had given a rifle and other firearms to a co-conspirator "for safekeeping," and that, at the time of the hearing, the firearms "[were] not in law enforcement custody . . . and [were] therefore retrievable." *Id.*

Here, by contrast, the Government does not offer any evidence that Mr. Worrell hid or attempted to hide any evidence. Quite the contrary, the Government concedes that Mr. Worrell volunteered to be interviewed by law enforcement, and Mr. Worrell was forthright about his alleged presence at the U.S. Capitol. *Cf. Chrestman*, 2021 WL 765662, at *14 (noting that the defendant did not voluntarily surrender to law enforcement). In other words, the Government's

11

own evidence proves that Mr. Worrell has not and will not obstruct a law enforcement investigation. Accordingly, there is no reason to believe Mr. Worrell will do so if released. The third statutory factor thus favors Mr. Worrell.

### e. **The Nature and Seriousness of the Danger Posed by the Defendant's Release.**

The fourth factor, the nature and seriousness of the danger to the community posed by the defendant's release, militates against detention. Mr. Worrell has not been in legal trouble since 2009 and there is no evidence that Mr. Worrell confronted or sprayed pepper spray gel at police officers. The same considerations that inform analysis of the nature and circumstances of charged offenses show that Mr. Worrell's conduct did not encourage others to break the law or facilitate their misconduct, nor that his conduct was particularly egregious. Unlike *Chrestman*, Mr. Worrell did not pre-plan or coordinate with other participants before, during, or after the event. Mr. Worrell traveled to the nation's capital equipped with tactical protective gear and pepper spray as a defensive measure, knowing that at large scale political events like the one on January 6, 2021, counter-protestors are often present and violence may unexpectedly erupt. He did not do so with intent to enter into conflict with anyone, particularly, law enforcement. *See Chrestman,* 2021 WL 765662, at *15.

The Court's finding that Mr. Worrell "will not adhere to a court orders and that no condition or conditions will assure the safety of the community . . . , if he were to be released" is clearly erroneous because the Government failed to show by clear and convincing evidence that Mr. Worrell had "determination to persevere in committing acts of political violence". *See United States v. Munchel*, No. 21-3010, --- F.3d ---, 2021 WL 1149196, at *7 (D.C. Cir. Mar. 26, 2021) (Remanding detention order where District Court's reasoning was not sufficiently explained or supported by the evidence).

Just as importantly, the record supports the finding that Mr. Worrell has a severe and deteriorating medical condition, ties to his family, and ties to his community that will assure his compliance with any release conditions.

In some circumstances, a particular defendant's medical condition can reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g). Absent those circumstances, however, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not impact the § 3142(f) and (g) analysis. *See, e.g., United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. Nevertheless, "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).

In this case, the Mr. Worrell is diagnosed with cancer and has been receiving treatment, to include chemotherapy as well as radiation. Since his pretrial confinement, Mr. Worrell has suffered aggravating symptoms of his cancer, to include lymphomas of the skin on his face, creating dangerous exposed lesions. Dr. Rucker's affidavit offers an individualized compelling assessment that Mr. Worrell is at greater risk than other detainees, suffering from a condition that may put him at an increased risk for severe illness resulting from the virus. *See* Ex. B. Despite the Government's

13

contention that Mr. Worrell is a flight risk, the Court should take into consideration that this serious progressive disease which jeopardizes Mr. Worrell's life. Even outside the additional risks contracting COVID-19 would pose, Mr. Worrell's condition will continue to worsen and substantially erode Mr. Worrell's quality of life without adequate medical supervision and treatment. Thus Mr. Worrell's medical condition reduces the risk of flight or danger to the community, and the health condition that is considered in the context of § 3142(g).

Taking the nature of the charges against Mr. Worrell, the weight of the evidence, and Mr. Worrell's history and characteristics, including his current medical conditions, this Court should reconsider whether Mr. Worrell would pose a grave danger to the community if released. The Government does not contend that Mr. Worrell poses a serious risk of flight. Prior to Mr. Worrell's arrest he drove several hours to turn himself in to law enforcement. Furthermore, other far less damaging means exist by which the Court can be assured of Mr. Worrell's compliance with conditions of release, that still allow him to treat his ongoing life-threatening medical issues while mitigating his risk of contracting COVID-19 and worsening them, for example monitored house arrest.

Mr. Worrell is suffering in jail and has been unable to get the medical attention he needs for his life-threatening cancer. Further the Government has provided no evidence that the riot was anything but spontaneous and the Mr. Worrell's alleged role in it was anything but minor involvement. As justice requires, Mr. Worrell should be allowed to receive the proper medical care and treatment for his lymphoma in his home community, reunite with his family, resume his job with a living wage, as he does not present a threat to his community or pose a flight risk to await his trial date.

## IV. CONCLUSION

For the foregoing reasons, Mr. Worrell respectfully requests that the Court reconsider and amend the Chief Judge Beryl A. Howell's March 19, 2021 Order of Detention Pending Trial (ecf No. 13).

Date: March 26, 2021				Respectfully Submitted,

*[signature: John M. Pierce]*

John M. Pierce (*PHV Admitted*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorney for Defendant Christopher Worrell*

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, March 26, 2021, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                                        /s/ John M. Pierce
                                        John M. Pierce